(This form is intended to be used by persons who are not represented by an attorney. The form should NOT be used by a prisoner who is filing a complaint under the Civil Rights Act, 42 U.S.C. section 1983. A separate form is obtainable for prisoners.)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

Oluwatosin Smith Oluwadare

_____

_____

_____

(Enter above the **FULL** name of each
plaintiff in this action)

vs.

Iowa State University;

Altukhova Nataliya, in her

official and individual capacity;

Dayal Vinay, in his individual

capacity.

(Enter above the **FULL** name of each
defendant in this action)

4-17-CV-197

RECEIVED
2017 JUN -7 PH 1:14
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

**COMPLAINT**

(1). Breach of Contract

(2). Violations of the Fourteenth
Amendments, 42 U.S.C. §1983.

**Parties**
(In item A below, place your name in the first blank and place your present address and telephone number in the second blank. In the third blank write the state where your home is ("Home State"). In item B below, do the same for additional plaintiffs, if any.)

A.    Name of Plaintiff  Oluwatosin Smith Oluwadare

Address & Telephone Number  216 stanton avenue, apt 307b, Ames IA 50014

Home State  Iowa

B.    Additional Plaintiffs (include addresses, telephone numbers and home state for each)

(In item C below, place the **FULL** name of the defendant in the first blank place, the address and telephone number for the defendant in the second blank. In the third blank, write the state in which the defendant has his/her home. If the defendant is a corporation, list the location of its home office, and the state where it is incorporated, if known. If the defendant is a government agency, simply name it. In item D, do the same for additional defendants, if any.)

C.    Name of defendant  Iowa State University

Address & Telephone Number  Office of University Counsel, 3550 Beardshear Hall, Ames, IA 50011-2045
phone:515-294-5352

Home State  Iowa

D.    Additional Defendants (include addresses, telephone numbers and home state for each).

Altukhova Nataliya: 2322 Howe 537 Bissell Rd Ames, IA 50011

phone: 515-294-7482; Dayal Vinay, 2351 Howe, 537 Bissell Rd Ames,

IA, 50011 phone: 515-294-0720

**STATEMENT OF CLAIM**

(State here as briefly as possible the **FACTS** of your case. You **MUST** state **EXACTLY** what each defendant personally did, or failed to do, which resulted in harm to you. State the date **AND** place of all events. Attach an extra sheet if necessary, and write the heading "Part II Continued" at the top of the sheet. Keep to the facts. Do not give any legal arguments or cite any cases.)

Plaintiff Oluwatosin Smith Oluwadare ("Oluwatosin"), for his

Complaint against Defendants: Iowa State University ("ISU"),

Altukhova Nataliya, and Dayal Vinay, states as follows:

_____

_____

_____

_____

_____

(If you know, **BRIEFLY** state what **SPECIFIC** law of constitutional provisions defendant(s) violated.)

Violations of the Fourteenth Amendments to the Iowa & United

States Constitutions.

_____

_____

_____

_____

_____

**RELIEF**

(State briefly **EXACTLY** <u>what you want the Court to do for you.</u> Make no legal arguments. Cite no cases or statutes.)

Damages in an amount in excess of ninety thousand dollars to compensate Oluwatosin's

pecuniary damages caused by Defendants' conduct. regrade of AeroE 160 and AeroE 426 solely

on individual work of the Oluwatosin. Release of Oluwatosin's transcript and restructure of

the tuition fees of spring 2016, without collection fees and interest due to the breach of contract.

Such other and further relief as this court may deem just, proper, equitable, and appropriate.

**Signature(s) of Plaintiff(s)**

Signed this ~~20~~ 7 0.0 day of ~~May~~ June 0.0 , 2017 .

_____
(Signature of Plaintiff)

216 stanton avenue,

Apt 307b

Ames, IA  50014

Email : sonit99@yahoo.co.uk

_____
(321)-406-5256
(Area Code)-Telephone Number

Part II continued

## **INTRODUCTION: substantive allegations**

1.   Iowa State University ("ISU") is one of two Iowa's universities and claims its "focus has always been its students"; helping its "students take advantage of many opportunities to engage in real-world class experiences and cutting-edge research". The main mission is to "create, share, and apply knowledge to make Iowa and the world a better place". Based on these, Oluwatosin Smith Oluwadare ("Oluwatosin") enrolled in the University's undergraduate engineering program. However, Oluwatosin's experiences were the very antithesis of these statements.

2.   ISU engaged in a systematic campaign of academic degradation, retrogression and stagnation while fostering a divide between the Plaintiff and its students; isolating and detaching Oluwatosin from other students with whom he shares commonalities, by placing these students in a conducive and progressive academic cocoon, in the hopes that in future, it is used as a foil to validate a victim-blaming argument. This action ensued because Plaintiff has spent approximately $200,000 on his undergraduate education over nine years and is yet to graduate; he is more than 4 years behind is friends and colleagues.

3.       The Defendants have delayed his graduation, caused him to

default on his financial obligations, and denied him the same rights

of other undergraduate students with regards to the Due Process

Clauses of the Iowa and United States Constitutions. Furthermore,

the student-university relationship is analogous to mutualism; on the

contrary the relationship between Plaintiff and ISU is analogous to

parasitism: his grades, time, hard-work, constitutional rights,

money, future is taken away and he is left in severe economic

hardship.

4.       Accordingly, ISU's actions are counter-intuitive: the

success of an institution's alumnus redounds to the institution's

positive image therefore working against its own student, giving the

academic fillip to his/her failure and stagnating him/her is counter-

intuitive. Which broaches the question:  Does ISU see the Plaintiff

has a future alumnus?

## FACTUAL BACKGROUND
### Exclusion from honour roll and scholarship awards

5.       The Plaintiff is an Engineering student that

maintained 3.91 cumulative GPA up until the end of spring 2014

semester with 75.5 cumulative credit hours which categorises

Oluwatosin has a Junior; yet he was never offered a scholarship nor

was he included in the honour roll awarded in spring 2014: Top 2

percent of sophomore year, which he was given in freshman year.

### Infringing on contractual agreement

6.      Spring 2016, plaintiff was offered a conditional

admission by the international students and Scholars Office

("ISSO"). The condition was that Oluwatosin  was to produce a

medical leave of absence letter regarding taking medical leave the

prior semester (fall, 2015) at a previous university and for the

present semester (spring, 2016) at Iowa State University, before he

would be admitted as a legal international student of Iowa State

University. Plaintiff took the offer and produced a letter from his

doctor that stated he has "cumulative stress" and recommended

"sedentary" rest for that semester spring 2016.

7.      A contract was formed between Oluwatosin and

Iowa State University from the moment the doctor's medical leave

of absence was accepted by the international students and Scholars

Office.

8.      Plaintiff performed his contractual obligations

pursuant to the terms of Iowa State University's offer and registered

for his classes.

9.      Subsequently, Oluwatosin had a severe headache the

second week of the semester (spring, 2016) preventing him from

attending classes that week; so severe he could not even leave the house therefore self-medicated on the painkillers he got from his roommate; every four hours for three days before it subsided by degrees.

10.     On Friday February 26, 2016, Oluwatosin received a string of emails from the instructor of AeroE 344 laboratory class, Hui Hu, concerning his absence from one class period. One of the emails stated that "absences from lab exercises will result in an "F" in the grade for AerE344 course". Consequently, Oluwatosin has to produce a doctor's "note" about his "sickness"-- headache.

11.     Subsequently, Oluwatosin was prevented from attending the AeroE 344 laboratory and from signing the attendance sheet at the laboratory by the laboratory assistant without producing the doctor's note; Plaintiff was ultimately given an F for that semester.

12.     Based on the contractual agreement with ISU, Oluwatosin should not be barred from class nor failed for missing just one day of classes of the whole semester since the doctor's letter presented to ISSO covers him for that semester.

13.     Furthermore, there exists a doctor-patient confidentiality, which is one of the most important pillars of

medicine, which prevents the disclosure of medical conditions, concerns and prognosis to others, especially non-doctors.

14.     Additionally, no academic yardstick (test, homework, examination) can be employed to medically gauge the level of stress an individual is experiencing at any moment in time nor did Plaintiff's doctor mention that the plaintiff had mental incapacity.

15.     Oluwatosin enrolled at Iowa State University, his parents paying for tuition and fees mostly upfront, before even registering for any course, as demanded by the University.

16.     Plaintiff relied on the belief that ISU will implement and enforce its Policies and comply with the requirements of applicable law.

17.     There is an implied contract in law between Iowa State University and Oluwatosin Smith Oluwadare . ISU violated this contract partly by not awarding Oluwatosin his rights and merits to which he was entitled; and partly by failing him and preventing him from finishing the course he registered for within a sedentary, peaceful academic environment.

## Academic degradation: ISU fails Plaintiff in AeroE 426

18.     Fall, 2014: Plaintiff registered for Aerospace

Engineering 160 ("AeroE 160") and Aerospace Engineering 426

("AeroE 426") amongst other Aerospace courses. Groups and

group-projects were assigned in AeroE 160 and AeroE 426.

Oluwatosin was assigned to a group, in each of these courses.

19.     Plaintiff has been involved in at least five different

group projects, over the years, in three different universities,

including Iowa State University, and passed each of these courses

with a letter grade A (without any academic issue  or social ruckus

or both) prior to fall 2014.

20.     Due to students syndrome, a well observed

phenomenon in academia, the group members only started work on

the group project, in AeroE 426, two days to the deadline; a project

which the group had over four weeks to execute. Deadline for

submission was December 8, 2014; group stated work on project

December 5, 2014 (over the weekend).

21.     The usual venue for group meetings was change

December 5; according to the group members it was "too noisy".

Oluwatosin was uninformed about this sudden change thus missed

this meeting and was also on sedatives over the weekend due to

extenuating circumstance: death of a family member. Plaintiff therefore was absent on the last two days before the submission deadline.

22.     Prior to this, Oluwatosin visited the instructor, Dayal Vinay, at his office, expressing his uncertainty about the group's dynamics and future, given that nothing has been done, group meeting rarely occurs and members hardly show up.

23.     Few hours before the submission deadline on Monday, upon inspection of the project, Oluwatosin expressed his disapproval and reservations; the project was submitted regardless by the other members.  One of the members argued that: some other groups in the course only had five pages of report and "ours" were well over that.

24.     Subsequently, the group was awarded an F (25/40) on the project. The instructor, Dayal Vinay, also awarded Oluwatosin a B- as an overall grade, in which the group project's score was a fairly large percentage of the final grade.

25.     This was Plaintiff's first B grade as a student of ISU, after five semesters. Prior to this he had maintained straight As.

26.     Oluwatosin contacted the instructor, Dayal Vinay, to start up the academic grievance process. He received no response to his email.

27.     The normal procedure was to respond to the complaint (plaintiff's email), this response will determine if the issue goes higher up, usually to the instructor's department chair, or is resolved between the student and instructor.

28.     The Defendant's decision not to respond to Oluwatosin's complaint puts the grievance process on a hold.

29.     Dayal Vinay has institutional and constitutional obligations to put in motion a fair and reliable process that recognises the basic due process rights of students in a expeditious fashion.

## Academic degradation: ISU fails Plaintiff in AeroE 160 awarding arbitrary and capricious grade

30.     Fall, 2014 AeroE 160: Oluwatosin was deprived of academic experience, due to collective alienation by group members based on the group's collective consensus without Oluwatosin's consent: formal and public exclusion from group activities, responsibility, communication, correspondence and role.

31.     Oluwatosin's name was not included on the presentation slide when the group was presenting the design project. Plaintiff had no knowledge and was not informed about the methodology and functionality behind the design.

32.     The situation deteriorated to a point where Oluwatosin was told to sit on a different table as opposed to the other group member's, by a member of the group.

33.     After this incident Oluwatosin reported the situation to the staff in charge of the laboratory class, Benson James. Informing him that the group's decisions are bias and that it was clear a subjective, arbitrary and biased cross-evaluation (worth 15%) will ensue affecting his grade at the end of the semester.

34.     The chasm in the group was left unattended; situation was left to deteriorate further.

35.     Plaintiff's name was later forced on the group-list by the group members about a week to the end of the semester after the project was over and was clear that the design was fundamentally flawed and would be a failure. As though Oluwatosin was the one who demanded not to have his name on the project in the first place.

36.     The belated inclusion of Oluwatosin's name was an obvious move to earn the right to cross evaluated the plaintiff.

37.     Given that his volunteered opinion with regards to the flaw of the design were rudely turned down, Oluwatosin decided not to interfere, according to their wish, with their consensus: project design, group's hierarchy, proposal, structure

and the like; should the project fail he won't be blamed for

interference into the already established group-plan.

38.     The project was a failure as predicted by the Plaintiff

and a public debacle for every member of the group: half the task

was barely accomplished. Arguably the worst design of the

semester.

39.     The group was awarded 91.5 for the design.

40.     Students were taught in AeroE 160 that the most

important characteristics of a good design are functionality and

safety: a product must function safely for its purpose; manufacturers

recall products mainly for functionality or safety or both issues,

rarely for anything else. Contrary to these, an LTA design that was

hardly functional (uncontrollable) for its purpose was given a 91.5

percent.

41.     The 91.5 was forced on the Plaintiff even after

expressing he wanted to be graded based on what he did as an

individual student in the class since he was not allowed to

contribute to the project.

42.     Plaintiff opines that the 91.5 was forced on him, even

though he had been barred from contributing to the project, due to

the fact that he was ostracised by the group members, to put

forward an argument that: the Plaintiff gladly took the 91.5 percent

(in AeroE 160) but rejected the 25/50 (in AeroE 426) solely because the latter was low, not due to contributions and other issues. It also empowers the group members and veils their error of judgement.

43.     Plaintiff further opines that since he was similarly failed in two classes in spring 2012, a situation he stressfully resolved personally, the use of student-group activities to accomplish a similar design a second time, diverting the direct involvement of an instructor, makes it seem as though Plaintiff has personal issues working in groups.

44.     Additionally, there was also a cross-evaluation in AeroE 160, worth fifteen percent of the total grade of the semester, performed at the end of the semester.

45.     Each student must perform the cross-evaluation, otherwise would be failed.

46.     The cross-evaluation was based on distributing 100 points to each "team" member based on how well each member *felt* the members did in the group i.e., based on subjective feelings as opposed to a system, marking-scheme or academic yardstick. This opens a yawning opportunity for subjective, arbitrary grades. In fact the number of possible combination of points summing up to a 100 points that each member can feel, produce and award, that would be acceptable grades for other member is almost infinite: one of many

acceptable scenarios is each member awarding 100-points to one particular member only and zero points to the other members; since it is a *zero-sum game*, as long as all the points add up to a 100-points it is acceptable. This leaves room for arbitrariness that may be influenced by cronyism, nepotism, in-group favouritism and the like, resulting in inflated evaluations beyond the maximum 100-points: for example, an individual can earn 600-points. In that case, does the individual get a 15% or 90%?

47.    To avoid these unfairness and arbitrary-and-capricious grading inherent the rule, Oluwatosin divided the 100-points equally (16.666 each) amongst the other team (group) members giving each member an equal opportunity to succeed; tantamount to an instructor giving each student in his/her class extra credit points of equal magnitude: it only shifts the "bell curve" forwards but the essence, nature, curvature and objectivity are preserved.

48.    Additionally, Plaintiff had to have participated and be included in the group as a functioning member to exude feelings needed to award points nor could the group members award Oluwatosin points after, based on collective agreement, depriving him of academic experience and participation.

49.    December 23 2014, Oluwatosin went to Katrina Williams' office at her request, pertinent to the chasm in the AeroE 160 group; Katrina Williams stated metaphorically that: the members of the group own the bakery and Oluwatosin was just buying bread. She further threatened that Oluwatosin will get arrested by Ames police if he fought any student; an evidence of a foreknowledge of the fact that the AeroE 160 group members were going to fail Oluwatosin and the anticipation of a physical retaliation from Oluwatosin when that situation occurs.

50.    On the contrary, Oluwatosin has always been a positive student of ISU: he teaches students and helps with assignment and projects-- once did a four-student group project in the absence of other members, i.e., he unselfishly helps students progress academically; he gives his pricey possession, financial and morale support to students, i.e., he helps the students advance socially and physiologically; he gives student-assistant, teachers and instructors perfect ratings on all evaluations whether they deserved it or not (which included, in fall 2014 prior to December 23: Altukhova Nataliya, Dayal Vinay, Katrina Williams), i.e., he helps instructors advance in their respective professions.

51.    Oluwatosin has fostered friendly relations and a productive, academic environment: a portrayal and a reflection of

his personal philosophy of "loving everyone", which he wrote about in his 7-page essay in English 250 at ISU, spring 2009.

52.      Plaintiff awards perfect ratings to instructors because: firstly, an instructor of ISU that got his first perfect ratings in 2009 thanked him saying: "I am glad you were in my class this semester; you made all the students so relaxed". Secondly, academia seldom regards student's cross-evaluations as a reliable data that should be a direct translation into reality (disgruntled students naturally give skewed evaluations): instructors are not sacked, demoted, pay-degraded based on a single semester's cross-evaluation. If ever, it will be based on a cumulative data over many semesters because cross-evaluations are merely feedbacks. Therefore Plaintiff's perfect ratings only served as the exception; a cold comfort for instructors.

53.      Subsequently, Oluwatosin was collectively given an F (30/100) on the cross-evaluation; and a B by the instructor, Altukhova Nataliya. The instructor used the cross-evaluation result to calculate Oluwatosin's final grade which was posted on December 28, 2014 and eventually on his transcript officially on December 30 2014; leaving almost no room to protest his grade before official postage.

54.     Plaintiff commence this action against the

defendant, Altukhova Nataliya in her official capacity, pursuant to 5

U.S. Code § 706. Altukhova Nataliya as "the principal" and each

group member, as "the agent" awarding grades on behalf of "the

principal".

### ISU's offers a farcical solution to Plaintiff's grade issues

55.     September 22, 2015 after Oluwatosin emailed the

dean's office concerning the grades of fall 2014 for AeroE 160 and

AeroE 426; Mirka Gary stated that Oluwatosin did not apply for an

appeal regarding AeroE 160 before the deadline therefore it cannot

be appealed; he also insinuated in the email that Oluwatosin should

do his own project in AeroE 426: a project of a graduate class

designed for four to five students as a group project for one

individual will be excessive.

56.     Mirka Gary stated further that reporting the alienation

from the group in AeroE 160 does not count. Therefore if a student

has a legitimate, insidious issue (an error, oversight, grade

complaint, clarification on assignment and the like) in a course

within a semester, that is potentially detrimental to his/her final

grade, reporting the issue or the issue per se does not count until the

final grade is officially posted on his/her transcript. One can infer

from this that ISU only adopts any rule, excuse or "solution" that works against the Plaintiff, in this case by deliberately merging two separate issues.

57.     On the contrary, Plaintiff did not Contact Mirka Gary to initiate the grievance process regarding AeroE 160 grade in September 22, 2015. If plaintiff wanted to initiate the grievance process he would have contacted Altukhova Nataliya via email at the end of the fall 2014 semester. Grievance process after the semester is one thing, reporting an issue within the semester is another.

58.     Plaintiff contacted Mirka Gary regarding the fact he proactively reported the issue to the instructor via the appropriate staff in charge, for a preventive action, and was ignored.

59.     There is a double standard that can be inferred here: a student cannot miss the deadline but it was just fine and acceptable to delay the Due Process and hold on to his/her constitutional right, viz., the defendant, Dayal Vinay, can choose to respond to the complaint concerning grades and kick-start the grievance process whenever it suits him.

60.     Spring 2016, after more than a year, Oluwatosin's adviser, Katrina Williams, told him [Oluwatosin] to send him [Dayal Vinay] another email, stating what his [Oluwatosin]

contributions were regarding the group project, that the Defendant was ready to resolve the issue.

61.    Oluwatosin got a response stating "the grade stands" from Dayal Vinay with an attached link to the email message.

62.    Oluwatosin's response was, "that's alright"; which was not an agreement but an acknowledgement. It was an acknowledgement of the fact that he was being lead on deliberately to instead create another avenue for, Dayal Vinay, to right his wrong after the fact; but "justice delayed is justice denied".

63.    Subsequently, spring 2016, Oluwatosin was offered a "solution" to this AeroE 426 and AeroE 160 grade issue by ISU via Katrina Williams at the ISSO with Vance Deborah: an offer to drop all courses (including courses in which Oluwatosin earned full As) taken in fall 2014 based on extenuating circumstance. Oluwatosin turned the offer down since it is tantamount to academic stagnation and retrogression: waste of time, money and effort; although, ISU is aware that Plaintiff is behind his friends more than three years; a solution reflecting a goal to make Plaintiff a perpetual student.

64.    Society places faith in academia to produce objective, verified, reliable and dependable grade via conscientious and exhaustive process; these grades are, in turn, used to make important (sometimes life-changing) societal decisions forming a

closed, self-sustaining loop. This is the most important duty and faith placed on the shoulders of academia.

## Academic stagnation and retrogression: ISU relegates Oluwatosin to freshman status

65.   March 3, 2016 Oluwatosin received an email via his Advisor stating that: "The college of engineering is placing a hold on your registration until you complete engr 101. You will beable [sic] to register for gen ed courses, non-engineering tech electives and 100 level engineering courses"; a move which is tantamount to an academic stagnation and retrogression. The email asserts that the Plaintiff has been "warned at least three times".

66.   Plaintiff was aware but once in fall, 2014 but transferred at the end of the semester due to extenuating circumstance and stress. The implication of not registering for a freshman-advising, orientation course that is offered on satisfactory-fail basis, which is not a prerequisite for any course, was not affirmatively asserted nor mentioned in spring 2016 by Katrina Williams.

67.   Plaintiff is informed and believes and based thereon alleges he was not informed of the *urgent* need to register for engr-101 in spring 2016 nor was he informed of the results of the failure to register for this course by Katrina Williams, while he was given

levity to choose the classes he can handle for that semester due to

cumulative stress a stated by his doctor in spring 2016.

68.    Oluwatosin would not have deliberately decided not

to register for this course knowing fully well the ramifications will

ultimately academically stagnate him given his personal urgency to

graduate. Therefore the decision to relegate Oluwatosin to freshman

status contradicts the mens rea principle in ISU's policies.

69.    ISU violated Oluwatosin Due Process rights because

he was not afforded the opportunity to defend his position and

appeal the decision before he was academically retrogressed and

stagnated.

### ISU's passive indifference leads to Plaintiff's loss of scholarship

70.    Oluwatosin needed, according to the terms of his

scholarship, to have at least 3.66 GPA to earn his scholarship

starting spring 2015; submit the GPA at most two months after the

end of every semester, otherwise the scholarship will be assumed

abandoned and forfeited.

71.    April 2017, Plaintiff pleaded for the forfeited-scholarship

renewal but it was unrenewable as he heretofore hoped because it

has been given to someone else due to the lapsed of time.

72.    ISU employees, including but not limited to Individual

Defendants, unlawfully failed to exercise the authority to institute

corrective measures; offered unreasonable and unfair remedies to the situations; showed deliberate indifference that caused: the forfeiture of his scholarship delaying is graduation, exposing his life to myriad dangers and forcing him to depend financially on his friends, who had graduated, to survive.

## Chronological summary of ISU'S exploitation of Plaintiff's supposed difficulties and loopholes to frustrate his academic endeavours

73.    Spring 2010: ISU barred Plaintiff from taking classes, put a hold on his transcript, put him out of status, put interest on money he owed, told him at ISSO to leave and go back home; stating over the phone "you cannot finish from here[USA]...you will not be able to come back ". Although plaintiff had a 4.0 GPA, had paid over fifteen thousand dollars and only owed about eight thousand dollars.

74.    Plaintiff was forced to go back home and lost two years due reapplication for admission, visa process and bureaucracy inherent in these processes.

75.    Spring 2012 after losing two years: plaintiff was ordered to pay over twelve thousand dollars ($8000+interest); was ordered to pay seventeen thousand dollars, tuition only, before he would be allowed to take just spring 2012 semester and is barred from ISU housing permanently without stating any reason for this bar.

76.     End of spring 2012: Plaintiff was ordered to pay forty

thousand dollars, and was still permanently barred from ISU

housing, before he would be allowed to take fall 2012 semester.

Furthermore, Plaintiff was failed in two classes, which he

stressfully rectified via instructors. For these stressful reasons,

Plaintiff decided to transfer out.

77.     Spring 2014: Plaintiff was ordered to pay twenty two

thousand dollars tuition only (and he is still permanently barred

from ISU housing) before a transfer-in can be approved. Plaintiff

paid twenty five thousand dollars in total for two semesters (spring

& fall 2014 tuition only). Furthermore, Plaintiff was failed in two

classes (AeroE 160 and AeroE 426) and arbitrary and unreasonable

decisions, without due process, were placed on him leading to his

loss of scholarship. Due to these stressful situations, Plaintiff

transfer out of ISU.

78.     Spring 2016: Plaintiff was ordered to present a doctor's leave-

of-absence letter or lose his legal status; he was failed because he

missed one class of the whole semester due to a headache; the

contract was breach by ISU; Plaintiff was academically retrogressed

to freshman status and stagnated due to missing a seminar class

eng-101 in spring 2009; transcript was put on hold because Plaintiff

was unable to pay tuition due partly to the breach of contract and

partly to lose of scholarship.

79.    ISU has clearly established a pattern of exploiting Plaintiff's

supposed weaknesses, creating difficulties, uncontrollable situations

and financial strains to stagnate and prevent him from progressing

consistently in order to graduate within four years. Strewing pitfalls

on his road to a degree while ignoring the Due Process of law, ISU

has eviscerated Plaintiff's dream to earn an Aerospace Engineering

degree and frustrated his friends and family.

## FIRST CAUSE OF ACTION
### Breach of Contract—Promissory Estoppel

80.    Plaintiff repeats and realleges each of the allegations

contained in paragraphs 1 through 79 of this Complaint.

81.    By promising to provide a peaceful and sedentary

academic environment, as recommended by the doctor's medical

leave of absence letter and to follow the recommendations therein,

where Plaintiff can pursue his degree in good faith [spring, 2016];

by promising to offer scholarship and award honours judiciously

and in good faith [spring, 2014]; by promising to focus on its

students while providing opportunities and world-class experience

in an objective academic climate, Defendants have caused Plaintiff

to enrol in the University and detrimentally rely upon the

University's promises.

82.    Plaintiff was deprived of his clearly established legal

rights under Iowa common law which caused academic stagnation.

Plaintiff suffered, and continues to suffer, economic injury and

irreparable harm. Plaintiff therefore is entitled to an award of

pecuniary damages, cost of lawsuit and equitable relief.

## SECOND CAUSE OF ACTION

### Violation of the Procedural and Substantive Component of the Due Process Clause of the Fourteenth Amendment to the United States Constitution Pursuant to 42 U.S.C. §1983

83.    Plaintiff repeats and realleges each of the

allegations contained in paragraphs 1 through 82 of this Complaint.

84.    The Fourteenth Amendment provides that no state

shall "deprive any person of life, liberty, or property, without due

process of law."

85.    The Due Process Clauses of the Iowa and United

States Constitutions are embroiled in the academic grievance

process of Iowa State University.

86.    The Defendant deciding not to respond to

Oluwatosin's complaint, putting the grievance process on a hold for

over one year, violates Oluwatosin Due Process rights pursuant to

42 U.S.C. § 1983; given Dayal Vinay in his individual capacity, as a

constitutional obligation to put in motion a fair and reliable process that recognises the basic Due Process rights of students in a expeditious fashion.

87.     As a direct and proximate result of the Defendant's [Dayal Vinay] violation of 42 U.S.C. § 1983, the defendant is partly responsible for the loss of Oluwatosin's scholarship, long-drawn undergraduate degree, mental anguish and extreme hardship.

88.     Defendant, Altukhova Nataliya in her official capacity and individual capacity, violated Oluwatosin's Due Process rights pursuant to 42 U.S.C. § 1983 and 5 U.S. Code § 706 partly by ignoring his concerns of being ostracised, displaying indifference, failing to exercise the authority to institute corrective and proactive measures within a meaningful time frame and implementing arbitrary actions and decision.

89.     Because of the Defendant's (Altukhova Nataliya) action the defendant is partly responsible for the loss of Oluwatosin's scholarship.

90.     Because of Individual Defendants' unlawful actions, Plaintiff is entitled to pecuniary damages and injunctive relief.

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff    Story
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Story
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☐ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☒ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

*PERSONAL INJURY*
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

*PERSONAL INJURY*
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

*PERSONAL PROPERTY*
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☒ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

*Habeas Corpus:*
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

*Other:*
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):* 28 U.S. Code § 1332 - Diversity of citizenship; amount in controversy greater than $75000
42 U.S.C. §1983

Brief description of cause: Breach of contract; Violation of the Fourteenth Amendment; Violation of Due Process Provisions of United States and Iowa Constitutions.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 90,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE      DOCKET NUMBER

DATE      SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE