IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| OLUWATOSIN SMITH OLUWADARE, | ) | Case No. 4:17-CV-00197-SMR-HCA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| IOWA STATE UNIVERSITY, ALTUKHOVA | ) | ORDER ON MOTION TO |
| NATALIYA, official and individual capacity, | ) | DISMISS |
| and DAYAL VINAY, individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff is a student at Iowa State University who received two unfavorable grades in the

fall of 2014 and a failing grade in the spring of 2016.  The university never dismissed Plaintiff,

although Plaintiff allegedly lost his merit-based scholarship.  He now brings this lawsuit and

alleges a breach of contract and violations of his due process rights.  Present before the Court is

Defendants' Motion to Dismiss.  [ECF No. 6].  In applying the Eleventh Amendment, qualified

immunity, and the statute of limitations, it is clear that all of Plaintiff's claims must be dismissed.

Defendants' motion is accordingly GRANTED.

## I.  BACKGROUND[1]

Plaintiff Oluwatosin Smith Oluwadare enrolled into Defendant Iowa State University's

("ISU") engineering program.  Compl. ¶ 1, [ECF No. 1 ¶ 1].  In the spring of 2010, Plaintiff failed

---

[1] The facts come from the Complaint, [ECF No. 1], and are assumed true for the purposes of the Motion to Dismiss.  *See Brown v. Medtronic, Inc*., 628 F.3d 451, 459 (8th Cir. 2010) (indicating that courts must accept as true the plaintiff's factual allegations, but they need not accept as true the plaintiff's legal conclusions).  The Court recognizes that pro se litigants face unique burdens not necessarily present for represented litigants, and therefore pro se complaints, "however inartfully pleaded," must "be liberally construed" and "held to 'less stringent standards than formal pleadings drafted by lawyers.'"  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also* Nedim Novakovic, Note, *Access to Justice:*

to pay $8,000 he owed to ISU, and ISU barred him from taking classes, put his transcript on hold, and forced him to "go back home." *Id.* ¶¶ 73–75.   He re-enrolled into ISU two years later in the spring of 2012. *Id.* ¶¶ 74–76.   He failed two classes that semester, transferred to another school, and returned again to ISU in 2014. *Id.* ¶¶ 74–77.

Plaintiff's experiences at ISU upon his return in 2014 led him to bring the following five claims against ISU and his two former professors, Defendants Altukhova Nataliya and Dayal Vinay:

(1) A Fourteenth Amendment due process violation claim pursuant to 42 U.S.C. § 1983 against ISU;

(2) A Fourteenth Amendment due process violation claim pursuant to 42 U.S.C. § 1983 against Professor Nataliya, in her official capacity;

(3) A Fourteenth Amendment due process violation claim pursuant to 42 U.S.C. § 1983 against Professor Nataliya, in her individual capacity;

(4) A Fourteenth Amendment due process violation claim pursuant to 42 U.S.C. § 1983 against Professor Vinay, in his individual capacity; and

(5) A breach of contract claim against ISU.[2]

*Id.* ¶¶ 6–17, 29, 54, 69, 78, 80–84, 86–88.

---

*Reducing the Implicit Pushback Burden on Working-Class Pro Se Plaintiffs in Employment Law Cases*, 104 Cal. L. Rev. 545, 555–67 (April 2016) (discussing unique in-court burdens some unrepresented litigants experience).

[2] Some language in the Complaint suggests Plaintiff is also bringing a breach of contract claim against the professors. *Id.* ¶¶ 80–82.  The factual allegations giving rise to the breach of contract claim concern ISU's alleged failure to honor Plaintiff's medical note in the spring of 2016. *Id.* ¶¶ 6–17.  Since the professors' challenged actions occurred in the fall of 2014 and have nothing to do with the factual allegations underlying the breach of contract claim, the Court reads Plaintiff's Complaint to allege the breach of contract claim against ISU only.  *Id.* ¶¶ 6–17, 18, 24, 30, 53–54. And if Plaintiff intended to allege a breach of contract claim against the professors, he has failed. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) ("Though pro se complaints are to be construed liberally, they still must allege sufficient facts[.]" (citation omitted)).

The first four claims—§ 1983 due process claims aimed at Defendants in varying capacities—concern Plaintiff's "failure" of two classes upon his second return to ISU in the fall of 2014: Aerospace Engineering 160 and 426. *Id.* ¶¶ 18, 24, 53, 87, 89. First, during the fall of 2014, Professor Nataliya instructed the Aerospace Engineering 160 class. *Id.* ¶¶ 30, 53. Professor Nataliya assigned a group project, and evaluated students' work based on the grade received for the overall project and the students' evaluations of each other. *Id.* ¶¶ 30, 39, 41, 44, 46. Plaintiff abstained from contributing to the project because his group members excluded him—"rudely turned down" his opinions and failed to include him in the group's member list until a week before the end of the semester—despite his complaints to the laboratory staff. *Id.* ¶¶ 30–37. Plaintiff's group received a 91.5% for the project and Plaintiff received an F (30/100) on his student evaluation, leaving him with a B in the class overall. *Id.* ¶¶ 39, 53. Nothing suggests Plaintiff notified, through e-mail or otherwise, Professor Nataliya of his dissatisfaction or that he officially pursued ISU's grade grievance processes to change his Aerospace Engineering 160 grade.

Second, and also during the fall of 2014, Professor Vinay instructed the Aerospace Engineering 426 class. *Id.* ¶¶ 20, 24. Professor Vinay also assigned a group project. *Id.* ¶ 20. Despite having four weeks to complete the project, Plaintiff's group began work only two days before the deadline. *Id.* Plaintiff did not contribute to this project either, this time because his group members changed the venue of their last-minute meeting without informing him and he was "on sedatives" during that weekend. *Id.* ¶ 21. He did, however, complain to Professor Vinay about his group's procrastination and to his group members a "[f]ew hours before the submission deadline" that he disapproved of their work. *Id.* ¶¶ 22–23. His group received an F (24/40) on the project and Plaintiff received a B minus as his overall grade in the class. *Id.* ¶ 24. Plaintiff e-mailed

Professor Vinay about his grade, did not receive an immediate response, and transferred out of ISU again that same semester. *Id.* ¶¶ 26, 66 (indicating transfer during the fall of 2014).

While away from ISU, about a year after completing Aerospace Engineering 160 and 426, on September 22, 2015, Plaintiff e-mailed the Dean's office regarding the two grades. *Id.* ¶¶ 55. He admits he did not do so to begin a grade grievance process but instead to merely discuss his prior complaints to laboratory staff and Professor Vinay. *Id.* ¶¶ 57–58.   The Dean's office informed him that his prior actions were insufficient to trigger the grade appeals process. *Id.* ¶¶ 55–58.   He then transferred back to ISU in the spring of 2016 and e-mailed Professor Vinay again. *Id.* ¶¶ 6, 60.   Professor Vinay informed him that his grade for Aerospace Engineering 426 "stands" and Plaintiff responded with "that's alright." *Id.* ¶¶ 61–62.   ISU then "insinuated" he could complete his own project for a new grade and expressly allowed him "to drop all courses (including courses in which [Plaintiff] earned all As) taken in [the] fall [of] 2014." *Id.* ¶¶ 55, 63. Plaintiff refused. *Id.*   He now alleges, in his first four claims, that his experiences regarding his grades in Aerospace Engineering 160 and 426 violated his Fourteenth Amendment due process rights.[3] *Id.* ¶¶ 83–90.

_____

[3] Plaintiff also cited the "Due Process Clause" of the Iowa Constitution. *Id.* ¶ 85.   The Iowa Supreme Court has recently held that the Iowa Constitution may on its own provide such a cause of action. *See Godfrey v. State*, ___ N.W.2d ___, 2017 WL 2825878, at *24 (Iowa June 30, 2017).   However, a thorough reading of the Complaint and the parties' briefs indicates Plaintiff is bringing his due process claims in reliance on the United States Constitution only.   The Complaint titles the second claim as a "[v]iolation of the Procedural and Substantive Component of the Due Process Clause of the Fourteenth Amendment to the United States Constitution," Plaintiff does not contend Defendants' characterization of the Complaint as bringing a due process claim under the federal constitution only, and Plaintiff himself explains that his due process clause is under the federal constitution.   [ECF Nos. 1 at 27; 11-1 at 2].   To the extent Plaintiff intended to bring a state due process claim as well, such a claim is dismissed for the same reasons the Court dismisses Plaintiff's other claims.   At the very least, as alleged in the Complaint and analyzed below in this ruling, Defendants provided Plaintiff with the requisite due process.

The fifth and final claim—breach of contract against ISU—involves Plaintiff's failure of his Aerospace Engineering 344 class upon his third return to ISU in the spring of 2016. *Id.* ¶¶ 11–12. He re-enrolled that semester after providing a doctor's note establishing a basis for his medical absences he might need to take that semester. *Id.* ¶ 6. Two weeks into the semester, Plaintiff remained home due to a headache that lasted three days and required consumption of his roommate's painkillers every four hours. *Id.* ¶ 9. The instructor e-mailed him that he needed to produce a doctor's note (apart from the initial note given to ISU generally) for his absence and that absences would result in a failing grade. *Id.* ¶ 10. "Subsequently, [he] was prevented from attending . . . laboratory and from signing the attendance sheet . . . without producing the doctor's note," and he ultimately received an F at the end of the semester. *Id.* ¶ 11. Plaintiff's fifth claim alleges ISU is liable under a promissory estoppel theory because it failed him in Aerospace Engineering 344 despite accepting his doctor's note and allowing him to re-enroll.[4] *Id.* ¶¶ 12, 17.

In addition to his experiences in the above three classes, Plaintiff also lost his GPA-dependent scholarship after failing to timely submit his GPA in the fall of 2015, and had his registration for advanced engineering classes put on hold in March 2016 because he failed to take the requisite Engineering 101 class. *Id.* ¶¶ 65–68, 70–72. Plaintiff "spent approximately $200,000 on his undergraduate education over nine years and is yet to graduate; he is more than 4 years behind [his] friends and colleagues." *Id.* ¶ 2.

---

[4] Plaintiff alleged his breach of contract claim in several ways. The Complaint first alleges Plaintiff and ISU formed an express contract, but then immediately characterizes it as "an implied contract in law." *Id.* ¶¶ 6–17. The Complaint then identifies the claim as "Breach of Contract—Promissory Estoppel." *Id.* ¶¶ 80–82. In his resistance to Defendants' motion, Plaintiff explains that his breach of contract claim is a claim for promissory estoppel. [ECF No. 11-1 at 17].

On June 7, 2017, Plaintiff, pro se, brought the above five claims against Defendants: four § 1983 claims against Defendants in varying capacities and a breach of contract claim against ISU. *Id.* ¶¶ 80–90. He seeks "in excess of ninety thousand dollars" in damages, including restructuring of the tuition fees for the spring 2016 semester, and injunctive relief, namely, a "regrade of AeroE 160 and AeroE 426" based solely on Plaintiff's individual work and the release of Plaintiff's transcript. *Id.* at 4. Present before the Court now is Defendants' fully briefed Motion to Dismiss, [ECF No. 6], as amended. [ECF No. 7]. The parties did not request oral arguments, and the Court finds oral arguments are unnecessary to the resolution of the motion.

## II.  STANDARD OF REVIEW

Defendants bring their Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [ECF No. 7 at 1]. Rule 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The facts alleged in the complaint 'must be enough to raise a right to relief above the speculative level.'" *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009) (quoting *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009)). All

reasonable inferences must be drawn in the plaintiff's favor. *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009).

Rule 12(b)(1) permits a motion to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). If the movant mounts a facial challenge on the complaint—similar to a Rule 12(b)(6) analysis—"all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id.* If the movant mounts a factual challenge "on the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute." *Id.* Submission of evidence outside the Complaint under a factual challenge is properly done through an evidentiary hearing. *Id.* Since Defendants did not provide any evidence outside of the Complaint for the Court to consider, have not challenged any allegations in the Complaint as factually improper, or sought an evidentiary hearing, the Court treats Defendants' Rule 12(b)(1) arguments as a facial challenge and therefore assumes the Complaint's factual allegations regarding jurisdiction are true.

## III.  ANALYSIS

Before providing its analysis, the Court is compelled to highlight that "the decision of an individual professor as to the proper grade for a student in his course . . . requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking." *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1976). Such decisions are also, by and large, "committed to the control of state and local

authorities." *Id.* at 91 (quoting *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)).   As such, "[j]udicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint." *Id.* (quoting *Epperson*, 393 U.S. at 104); *accord Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985) (counseling "restrained judicial review of the substance of academic decisions").

This general caution of restraint is especially pertinent in this case given the unreasonableness of Plaintiff's position.   Plaintiff, an intermittent student at ISU, received unfavorable grades because he did not sufficiently excuse his absenteeism and, other than negatively criticising his group members' efforts, he abstained from participating in group projects.  Compl. ¶¶ 9–11, 20–21, 23–24, 37, 53, 78.  Once he received the unfavorable grades, he failed to substantially pursue ISU's established grievance process and rejected ISU's proposed solutions. *Id.* ¶¶ 55, 61–63, 66.  He instead claims ISU was required to perform what essentially amounts to a full trial before assigning him his grades: notice, a "hearing before an impartial tribunal," "confrontation and cross-examination," discovery, and "a decision [that is] based . . . on facts not opinions."  [ECF No. 14 at 2].   Thus, at the core of this lawsuit, Plaintiff appears to be unsatisfied with the grades his classmates worked to attain for him and now wants this Court to impose onto ISU the very trial-like system the Supreme Court acknowledged is inappropriate for academic decisions just so Plaintiff can obtain grades better than B and B minus.

Moving to the analysis, Defendants ask this Court to dismiss Plaintiff's lawsuit.  Citing Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants argue:

> In this case, all of the claims alleged in Plaintiff's Complaint against defendant ISU are barred by the Eleventh Amendment.   Separately and independently, the claims against ISU fail to allege even the minimal facts necessary to state a plausible claim for relief.  Plaintiff's claims against the individual defendants are likewise barred by the Eleventh Amendment, the doctrine of qualified immunity, and/or are improper under 42 U.S.C. § 1983.  In addition, the Complaint fails to even allege

that the individual defendants were parties to any alleged contract. [Thus], Plaintiff's Complaint should be dismissed in its entirety and with prejudice.

[ECF No. 7-1 at 8].

As set forth below, all of Plaintiff's claims must be dismissed. For the sake of clarity, the Court provides the following table to illustrate the outcome of Plaintiff's claims.

| Claim | Outcome |
|---|---|
| The § 1983 due process claim against ISU | Barred by the Eleventh Amendment |
| The § 1983 due process claim against Professor Nataliya, in her official capacity | Barred by the Eleventh Amendment to the extent the claim does not seek prospective injunctive relief but barred wholly nonetheless by the statute of limitations |
| The § 1983 due process claim against Professor Nataliya, in her individual capacity | Barred by the statute of limitations and qualified immunity |
| The § 1983 due process claim against Professor Vinay, in his individual capacity | Barred by the statute of limitations and qualified immunity |
| The breach of contract claim against ISU | Barred by the Eleventh Amendment |

## A.   The Eleventh Amendment

As explained below, the Eleventh Amendment bars the breach of contract and § 1983 claims against ISU entirely and the § 1983 claim against Professor Nataliya, in her official capacity, to the extent it does not seek prospective injunctive relief.

The Eleventh Amendment to the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although "[t]he Eleventh Amendment makes explicit reference to the States' immunity from suits," the immunity from suits "is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution[.]" *Alden v. Maine*, 527 U.S. 706, 712–13 (1999). Thus, the term "Eleventh Amendment immunity" "is convenient shorthand

but something of a misnomer" because the Eleventh Amendment merely "confirmed, rather than established, sovereign immunity as a constitutional principle." *Id.* at 713, 728–29.  With this in mind, the United States Supreme Court has applied the states' immunity from suits beyond the text of the Eleventh Amendment to make clear that a private party cannot sue a state unless sovereign immunity is waived.  *See, e.g.*, *id.* at 712 (applying immunity to suits brought in state court despite no such language in the Eleventh Amendment); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 47 (1996) (applying immunity to suits by Native American tribes despite no such language in the Eleventh Amendment); *Edelman v. Jordan,* 415 U.S. 651, 662–63 (1974) ("While the Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.").  The immunity serves as a jurisdictional bar "regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

Immunity from suit may be waived through two relevant methods.  First, "[i]f a State waives its immunity and consents to suit in federal court, the suit is not barred by the Eleventh Amendment." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Second, "Congress can abrogate the Eleventh Amendment without the States' consent when it acts," pursuant to § 5 of the Fourteenth Amendment, "'to enforce, by appropriate legislation' the substantive provisions of the Fourteenth Amendment." *Id*. at 474 (quoting *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) (quoting U.S. Const. amdt. XIV, § 5)).  In both situations, the waiver must "be unequivocally expressed." *Pennhurst*, 465 U.S. at 99.

Moreover, two limiting principles are also relevant here.  First, "[a] consequence of [the] [Supreme] Court's recognition of preratification sovereignty as the source of immunity from suit

is that only States and arms of the State possess immunity from suits authorized by federal law." *N. Ins. Co. of N.Y. v. Chatham Cty., Ga.*, 547 U.S. 189, 193 (2006). "[T]he question whether a particular state agency . . . is . . . an arm of the State, and therefore 'one of the United States' within the meaning of the Eleventh Amendment, is a question of federal law." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 n.5 (1997). "[T]he court must 'examine the particular entity in question and its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state,'" and does so by looking "at the degree of local autonomy and control and most importantly whether the funds to pay any award will be derived from the state treasury.'" *Greenwood v. Ross*, 778 F.2d 448, 453 (8th Cir. 1985) (quoting *Laje v. R.E. Thomason Gen. Hosp.*, 665 F.2d 724, 727 (5th Cir. 1982)). The United States Court of Appeals for the Eighth Circuit has also approved the use of the following nine factors "to the extent they are relevant" and "are not expressly or impliedly contained in *Greenwood*":

> (1) local law and decisions defining the status and nature of the agency involved in its relation to the sovereign; (2) most importantly, whether the payment of the judgment will have to be made out of the state treasury; (3) whether the agency has the funds or the power to satisfy the judgment; (4) whether the agency is performing a governmental or proprietary function; (5) whether it has been separately incorporated; (6) the degree of autonomy over its operations; (7) whether it has the power to sue and be sued and to enter into contracts; (8) whether its property is immune from state taxation; and (9) whether the sovereign has immunized itself from responsibility for the agency's operations.

*Sherman v. Curators of Univ. of Mo.*, 16 F.3d 860, 865 n.6 (8th Cir. 1994) (citing *Kovats v. Rutgers, The State Univ.*, 822 F.2d 1303, 1307 (3d Cir. 1987)).

Second, a suit against a state official for prospective injunctive relief—to enjoin a continuing violation of federal law—escapes the scope of the Eleventh Amendment. *Ex Parte Young*, 209 U.S. 123, 159–160 (1908). Such "a suit challenging the constitutionality of a state official's action is not one against the State," *Pennhurst*, 465 U.S. at 102, because an

unconstitutional enactment means the State could not have authorized the action and therefore the officer acting pursuant to that impermissible authorization is "stripped of his official or representative character." *Ex Parte Young*, 209 U.S. at 160. "This exception to the Eleventh Amendment bar is limited, however, to injunctive relief granted on the basis of federal law." *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 447 (8th Cir. 1995).

Here, ISU and Professor Nataliya, in her official capacity, share in the State of Iowa's Eleventh Amendment immunity. As an initial matter, Plaintiff does not argue otherwise. *See* [ECF No. 11-1 at 10–11 (acknowledging courts apply various factors to determine if an entity qualifies as an arm of the state for Eleventh Amendment purposes, but failing to argue why the factors do not extend Eleventh Amendment protection for ISU or its professors)]; *Clark v. Iowa State Univ.*, No. 4:09-cv-370 RP-CFB, 2009 WL 10677892, at *1 (S.D. Iowa Dec. 17, 2009) (assuming ISU is "considered the 'State' for purposes of the Eleventh Amendment" because "Plaintiff does not dispute" that point). Regardless of Plaintiff's failure to argue this point, with respect to ISU, "[f]ederal courts have confronted with some regularity the question of whether state universities share in their respective state's [E]leventh [A]mendment immunity; the vast majority of courts have found that they do." *Sherman*, 16 F.3d at 863, n.3 (citing cases). This includes a Southern District of Iowa opinion—which this Court finds persuasive—holding that ISU, specifically, "share[s] in the State of Iowa's Eleventh Amendment immunity." *Van Pilsum v. Iowa State Univ. of Sci. & Tech.*, 863 F. Supp. 935, 939 (S.D. Iowa 1994); *see also Trelevan v. Univ. of Minn.*, 73 F.3d 816, 818–19 (8th Cir. 1996) (affirming district court's use of case law to find that a public university is an arm of the state without having to make its own "detailed findings of fact regarding the University's relationship with the state"). Since ISU is an arm of the State, Professor Nataliya at ISU is a state official, who, in her official capacity, also enjoys the

immunity from suits afforded to ISU.  *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619–20

(8th Cir. 1995) (treating a professor as a state official); *Schuler v. Univ. of Minn.*, 788 F.2d 510,

513, 516 (8th Cir. 1986) (same).

Moreover, this immunity from suit has not been waived.  Plaintiff fails to argue this issue

altogether as well.  And the Court is unaware of any unequivocal expression from the State of Iowa

or Congress eliminating immunity from suits involving claims for breach of contract or due

process violations pursuant to § 1983.  Indeed, "§ 1983 does not explicitly and by clear language

indicate on its face an intent to sweep away the immunity of the States; nor does it have a history

which focuses directly on the question of state liability and which shows that Congress considered

and firmly decided to abrogate the Eleventh Amendment immunity of the States."  *Quern v.

Jordan*, 440 U.S. 332, 345 (1979); *accord Hadley v. N. Ark. Cmty. Tech. Coll.*, 76 F.3d 1437, 1438

(8th Cir. 1996) ("Section 1983 does not override Eleventh Amendment immunity."); *Brine v. Univ.

of Iowa*, 90 F.3d 271, 275 (8th Cir. 1996) (affirming dismissal of due process claim brought

pursuant to § 1983 because of Eleventh Amendment immunity); *Nix v. Norman*, 879 F.2d 429,

431 (8th Cir. 1989) ("The Eleventh Amendment presents a jurisdictional limit on federal courts in

civil rights cases against states and their employees.").

This leaves only the issue of the extent to which Plaintiff's claims are barred.  The breach

of contract claim must be dismissed entirely because the exception regarding prospective

injunctive relief does not apply to state law claims.  *See Rakow v. North Dakota ex rel. State Bd.

of Higher Educ.*, No. 98-3508, 2000 WL 227850, at *1 (8th Cir. 2000) (unpublished); *Dover

Elevator Co.*, 64 F.3d at 447.  Similarly, the § 1983 due process claim against ISU must be

dismissed because the prospective injunctive relief exception applies to claims against officials,

not the State or its agency itself.  *See Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir.

-13-

2007).  But the § 1983 claim against Professor Nataliya, in her official capacity, survives the Eleventh Amendment, as Plaintiff argues, to the extent it seeks prospective injunctive relief.  [ECF No. 11-1 at 10].  Such a claim is not aimed at the State; if successful, it is deemed levied merely against a person "stripped of [her] official or representative character and . . . subjected in [her] person to the consequences of [her] individual conduct."  *Ex Parte Young*, 209 U.S. at 160.  The Court will forgo detailing the exact contours of the surviving part of this claim because the § 1983 claims against Plaintiff Nataliya, in her official and individual capacities, are wholly barred by the statute of limitations, as explained further below.

At this stage of the analysis, then, the only claims that remain are federal due process claims under § 1983 aimed at the professors in their individual capacities and a federal due process claim under § 1983 seeking prospective injunctive relief aimed at Professor Nataliya in her official capacity.[5]

### B.   The Statute of Limitations

Defendants argue that Plaintiff's § 1983 claims against the professors must be dismissed as barred by the two-year statute of limitations.  [ECF No. 7-1 at 15].  The Court agrees.

As the Eighth Circuit has explained, "all section 1983 claims . . . will be governed by the relevant state's personal injury statute of limitations.  In Iowa, this means that all such actions will be governed by a two-year statute of limitations, Iowa Code § 614.1(2)."[6]  *Wycoff v. Menke*, 773

---

[5] This also answers Defendants' argument that they are not "persons" under § 1983.  [ECF No. 7-1 at 12, 14].  Indeed, "a State is not a person within the meaning of § 1983."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).  But "state officials are 'persons' under § 1983 when sued for injunctive relief because such actions 'are not treated as actions against the State.'"  *Trelevan*, 73 F.3d at 819 (quoting *Will*, 491 U.S. at 71 n.10).

[6] The Court acknowledges that the passage of 28 U.S.C. § 1658 in 1990 may now extend the statute of limitations for a § 1983 claim to four years, instead of two, in actions "made possible by a post–1990 [congressional] enactment."  *City of Rancho Palos Verdes, Cal. v. Abrams*, 544

F.2d 983, 984 (8th Cir. 1985).  Since Plaintiff filed his Complaint on June 7, 2017, any § 1983

claims that accrued before June 7, 2015, are barred.

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not*

resolved by reference to state law."  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  "Aspects of

§ 1983 which are not governed by reference to state law are governed by federal rules conforming

in general to common-law tort principles.  Under those principles, it is 'the standard rule that

[accrual occurs] when the plaintiff has "a complete and present cause of action,"' that is, when

'the plaintiff can file suit and obtain relief.'"  *Id.* (alteration in original) (citations omitted) (quoting

*Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201

(1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941))).  "Under the traditional rule of accrual

. . . the tort cause of action accrues, and the statute of limitations commences to run, when the

wrongful act or omission results in damages.  The cause of action accrues even though the full

extent of the injury is not then known or predictable."  *Id.* at 391 (quoting 1 C. Corman, Limitation

of Actions § 7.4.1 526–527 (1991) (footnote omitted)).

Before determining accrual and the application of the two-year statute of limitations, as an

initial matter, Plaintiff's due process claims must be properly framed.  Plaintiff appears to argue

that his due process rights were violated by each professor in two distinct ways: first, through the

manner in which the professors assessed Plaintiff's grades during the courses and, second, through

the improper review of those grades after Plaintiff received them.

---

U.S. 113, 123 n.5 (2005) (alteration in original) (quoting *Jones v. R.R. Donnelley & Sons Co.*, 541
U.S. 369, 382 (2004)).  This does not change the two-year statute of limitations applicable in this
case because Plaintiff's § 1983 claims do not rely on such enactments.

Plaintiff's § 1983 claims against Professor Nataliya, in her official and individual capacities, are clearly barred.  Plaintiff received an unfavorable grade in Aerospace Engineering 160 in the fall of 2014.  Compl. ¶ 53.  He then failed to contact Professor Nataliya altogether.  Although he contacted the Dean's office on September 22, 2015, he admits he did not do so "to initiate the grievance process regarding [Aerospace Engineering] 160."  *Id.* ¶¶ 55–57.  He adds, "[i]f [P]laintiff wanted to initiate the grievance process he would have contacted [Professor] Nataliya via email at the end of the fall 2014 semester," which he did not do.  *Id.* ¶ 57.  Plaintiff's § 1983 claims against Professor Nataliya, then, are time barred as to the assessment of the grade because it occurred more than two years before the Complaint, and as to the review of the grade because Plaintiff never sufficiently engaged the allegedly unconstitutional review process.  *See Disesa v. St. Louis Cmty. Coll.*, 79 F.3d 92, 95 (8th Cir. 1996) ("[B]ecause this alleged arbitrary policy was not applied to [Plaintiff's] detriment . . . this claim lacks merit.")

Plaintiff's § 1983 claim against Professor Vinay, in his individual capacity, is similarly barred.  The claim as it concerns the assessment of Plaintiff's grade is clearly barred because Plaintiff received an unfavorable grade in Aerospace Engineering 426 in the fall of 2014, more than two years before he filed his Complaint.  Compl. ¶ 24.  Although not as clear, Plaintiff's claim as it concerns the allegedly unconstitutional review of the grade is also barred.  Plaintiff claims Professor Vinay's delay in responding to Plaintiff's e-mail regarding his grade is a due process violation.  *Id.* ¶ 86.  But, surely, from the time Plaintiff received his grade in the fall of 2014 and June 6, 2015, Professor Vinay's lack of response caused Plaintiff sufficient damage such that Plaintiff's claim against Professor Vinay accrued.  Indeed, Plaintiff admits he transferred out of ISU at the end of the fall 2014 semester, more than two years before filing his Complaint, because of stress related to the receipt and review of the unfavorable grades.  *Id.* ¶¶ 66, 77.  Thus, Plaintiff's

delay in filing the Complaint until June 7, 2017, sinks his claim against Professor Vinay as to the review of the grade.

### C.  Qualified Immunity

Even if they escaped the statute of limitations, Plaintiff's § 1983 due process claims against the professors in their individual capacities are barred by qualified immunity.

The doctrine of "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Qualified immunity accordingly "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Messerschidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Pearson*, 555 U.S. at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))).  Thus, to succeed against the professors in their individual capacities, Plaintiff must plead "facts showing (1) that the [professors] violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818).  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* at 741 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  This Court has "discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Id.* at 735.

The two-prong test for qualified immunity warrants discussing the law applicable to Plaintiff's due process claims.  As an initial matter, a due process claim must rest on some

protectable interest.  *See Monroe*, 495 F.3d at 594–95; *Disesa*, 79 F.3d at 95.  The Eighth Circuit has "held that a student handbook setting forth a grievance procedure to contest an allegedly capricious or improper grade can establish a property interest in non-arbitrary grading."  *Disesa*, 79 F.3d at 95; *accord Ikpeazu v. Univ. of Neb.*, 775 F.2d 250, 253 (8th Cir. 1985) (per curiam). Plaintiff has failed to allege sufficient facts regarding ISU's student handbook or grievance process.  Although this alone warrants dismissing Plaintiff's due process claims, the Court will, as the Eighth Circuit has repeatedly done, "assume for purposes of analysis that the handbook created such an interest in this case."[7]  *Disesa*, 79 F.3d at 95; *accord Richmond v. Fowlkes*, 228 F.3d 854, 857 (8th Cir. 2000); *Schuler*, 788 F.2d at 513 n.6.  Having done so, the Court moves on to applying the two-prong test for qualified immunity first to procedural due process and, second, to substantive due process.

### 1. Procedural Due Process

A procedural due process claim alleges the procedures in arriving at a decision or outcome were impermissibly unfair.  *Carey v. Piphus*, 435 U.S. 247, 259–260 (1978).  In evaluating procedural due process challenges within the education realm, the Supreme Court has distinguished between academic and disciplinary dismissals.  *Horowitz*, 435 U.S. 89–90. Academic dismissals, the Court explained, rest "on the academic judgment of school officials that [the student] did not have the necessary clinical ability to perform adequately."  *Id*.  Such judgments are "subjective and evaluative" decisions that deserve significant deference because they require "expert evaluation . . . [and] historic judgment of educators," and bear "little

---

[7] The Supreme Court and the Eighth Circuit have also assumed, without deciding, that a protectable interest exists in pursuing one's education.  *Monroe*, 495 F.3d at 594–95 (citing *Ewing*, 474 U.S. at 222–23, and *Horowitz*, 435 U.S. at 84–85).  This interest does not arise in this case because Plaintiff was never dismissed from ISU.

resemblance to the judicial and administrative fact-finding proceedings." *Id*. Disciplinary dismissals, on the other hand, rest on "violation by a student of valid rules of conduct" or "disruptive and insubordinate behavior." *Id*. at 86, 90. Disciplinary dismissals accordingly deserve less deference because they bear a "resemblance to traditional judicial and administrative factfinding." *Id*. at 88–89.

Given this distinction, the Court outlined different procedures required for academic and disciplinary dismissals. "A formal hearing is not required for an academic dismissal." *Richmond*, 228 F.3d at 857; *accord Horowitz*, 435 U.S. at 86 n.3, 90–91. All that is required is "notice of faculty dissatisfaction and potential dismissal, and the dismissal decision must be careful and deliberate." *Richmond*, 288 F.3d at 857. On the other hand, disciplinary dismissals require notice and a hearing; however, given the general judicial restraint from involvement in academic affairs, the hearing may be merely an informal "give-and-take between student and disciplinarian, preferably prior to the suspension," that allows "the student [to] at least have the opportunity to characterize his conduct and put it in what he deems the proper context." *Goss v. Lopez*, 419 U.S. 565, 584 (1975). An interaction with the professor through e-mail, for example, can be enough.[8] *See Monroe*, 495 F.3d at 596.

Here, both prongs of qualified immunity bar Plaintiff's procedural due process claims against the professors in their individual capacities. First, Plaintiff's procedural due process rights were not clearly established around the time he received his contested grades because ISU and the professors never dismissed Plaintiff. The professors merely assessed grades for Plaintiff's group

---

[8] Despite imposing a higher procedural requirement, disciplinary dismissals do not come close to requiring what Plaintiff demands: (1) notice, (2) "hearing before an impartial tribunal," (3) "confrontation and cross-examination," (4) discovery, and (5) "that a decision based . . . on facts not opinions." [ECF No. 14 at 2].

projects and the class performance overall.  Although case law is sufficiently clear on the minimum due process required for *dismissals*, as explained above, it is unclear with respect to mere assessment and review of grades.  Presumably, the requisite due process is even more diminished than that afforded for academic dismissals since mere grade assessments are the most academic task imaginable and less consequential for the student than a dismissal from school.  *See Ewing*, 474 U.S. at 225 (counseling "great respect for the faculty's professional judgment"); *Horowitz*, 435 U.S. at 86 n.3 (noting "the severity of the deprivation" is a factor "in deciding the exact due process owed").  Indeed, with respect to assessments and reviews of grades with no subsequent dismissal, relevant case law of which this Court is aware summarily finds that the complaining student "was granted procedural protection beyond that required by the Fourteenth Amendment," but it does not delineate the bare minimum due process needed.  *Disesa*, 79 F.3d at 95.

Second, even assuming the due process required for academic dismissals applies here, the professors have not failed to provide such process.  Whether the professors followed ISU's established rules for grade assessment and review is immaterial so long as the minimum constitutional requirements were met.  *See Keefe v. Adams*, 840 F.3d 523, 536–37 (8th Cir. 2016); *Disesa*, 79 F.3d at 95 (noting a failure to follow established procedures is immaterial when minimum due process was afforded).  Plaintiff received notice of the group projects and their effect on his grade.  Compl. ¶¶ 18, 20, 24, 33, 44–47.  He then obtained notice of the professors' dissatisfaction when he received his grades for the projects and the two courses.  *Id.* ¶¶ 24, 53.  The professors made their assessments and, when sufficiently prompted, Professor Vinay made his reassessment.  *Id.* ¶¶ 24, 53, 61–62.  Plaintiff admits this process has led to satisfactory resolution of his complaints with prior professors.  *Id.* ¶¶ 43, 76.  Thus, nothing in the Complaint

indicates there was a lack of careful and deliberate decision-making, and this Court refuses to intervene in this fundamentally academic decision.

### 2.   Substantive Due Process

A substantive due process claim alleges the merits of a contested decision or outcome are insufficient. *Keefe*, 840 F.3d at 533.  Both the Supreme Court and the Eighth Circuit have never expressly found such a claim exists in the academic realm.  *See Ewing*, 474 U.S. at 222–23; *Horowitz*, 435 U.S. at 91–92; *Keefe*, 840 F.3d at 533 ("Following the Supreme Court's lead, [the Eighth Circuit] ha[s] repeatedly assumed without deciding that an academic dismissal may be challenged on substantive due process grounds[.]").  When they have assumed, *arguendo*, that such a cause of action exists, they have made clear that an education professional violates a student's substantive due process rights if the student "demonstrate[s] arbitrary and capricious conduct on the part of the College by showing that there was no rational basis for the College's decision or that dismissal was motivated by bad faith or ill will."  *Richmond*, 228 F.3d at 859; *accord Shuler*, 788 F.2d at 515.  This is an extraordinarily high bar.  Indeed, "[c]ourts are particularly ill-equipped to evaluate academic performance" and therefore judicial restraint is especially important in the substantive due process context.  *Horowitz*, 435 U.S. at 92; *see also Keefe*, 840 F.3d at 533 (acknowledging that the Eighth Circuit "appl[ies] the Supreme Court's deferential standard" to substantive due process claims within the academic context to routinely "up[hold] summary rejection of those claims").  For courts to intervene, a substantive due process claim has to relate to actions "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience' of federal judges."  *Keefe*, 840 F.3d at 533 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

Here, both prongs of qualified immunity bar Plaintiff's substantive due process claims against the professors in their individual capacities.  As explained, controlling case law has not clearly established a substantive due process cause of action here but has merely assumed one exists for the sake of argument, especially when no dismissal took place.  *See Keefe*, 840 F.3d at 533 ("[The Eighth Circuit] doubt[s] there is a cause of action [for a substantive due process violation] because . . . he was allowed to remain at CLC and transfer his credits to another academic program.").  Even assuming a substantive due process right was clearly established, nothing indicates the professors acted in bad faith, such that it shocks this Court's conscience.   Plaintiff received notice of the group projects' requirements and their effect on his grade, and notice of the professors' dissatisfaction when he received his grades for the projects and the two courses.  Compl. ¶¶ 18, 20, 24, 33, 44–47, 53.  Although Plaintiff chose to not begin the grade grievance process for Professor Nataliya's grade assessment, he did e-mail Professor Vinay about his grade assessment, Professor Vinay informed Plaintiff that "the grade stands," and Plaintiff responded with "that's alright."  *Id.* ¶¶ 60–62.  In addition to the notices and this informal give-and-take hearing with Professor Vinay—a process Plaintiff admits has led to rectifying failing grades with prior professors—Plaintiff admits he procrastinated and did not contribute to the projects for various reasons.  *Id.* ¶¶ 20–21, 37, 43, 76.  This Court accordingly refuses again to intervene in the professors' fundamentally academic decision.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, [ECF No. 6], as amended, [ECF No. 7], is GRANTED and Plaintiff's Complaint is DISMISSED.  Specifically, the Eleventh Amendment wholly bars Plaintiff's breach of contract and § 1983 claims against ISU, and bars his § 1983 claim against Professor Nataliya, in her official capacity, to the extent that claim does not

seek prospective injunctive relief.  The statute of limitations bars Plaintiff's § 1983 claims against Professor Nataliya, in her individual and official capacity, and Professor Vinay, in his individual capacity.   Qualified immunity bars Plaintiff's § 1983 claims against the professors in their individual capacity.

The Court denies Defendants' request for an award of costs. Defendants have not sufficiently argued the request.

IT IS SO ORDERED.

Dated this 17th day of August, 2017.

_____
STEPHANIE M. ROSE, JUDGE
UNITED STATES DISTRICT COURT